H. G. HORTON AND ANNIE C. HORTON, RESPONDENTS, v. MOLLIE CANTREAL, APPELLANT.—187 S. W. (2d) 860.

Springfield Court of Appeals.  May 2, 1945.

Rehearing Denied June 5, 1945.

*Martin Farrow* for appellant.

*M. H. Galt* for respondents.

684

VANDEVENTER, J.—This is an unlawful detainer action. For convenience, we will refer to the parties as the landlord and the tenant. The complaint was filed before a justice of the peace and by stipulation of the parties certified to the circuit court for determination. The complaint alleges:

"Complainants, H. G. Horton and Annie C. Horton state that the Springfield Area Rent Office of the Office of Price Administration,

erected and acting under the Emergency Control Act of 1942 has authorized the complainants to pursue their remedies under the laws of the State of Missouri for the removal or eviction of the defendant Mollie Cantrell from complainant's property, being the second and third floors of Number 302 West Olive Street, in the city of Springfield, in Campbell Township, in Greene County, Missouri. By certificate dated the 30th day of October, 1944.''

In addition to the foregoing, the complaint contained the usual allegations of an unlawful detainer action and about which there is no objection on the part of the tenant. An answer was filed asserting that the certificate of the Area Rent Control Office was not obtained upon legal or sufficient grounds, and further asserted that the landlord was not seeking to recover said premises in ''good faith'' for the purpose of demolition or remodelling,. but that the landlord had declared to the Rent Control Office that he wished to withdraw the premises from the rental market as a separate unit to rent to the operators of an adjoining hotel, and further, that the landlord had represented to the Rent Control Office that the tenant was not in fact a tenant but an ''occupant'', that she had never been recognized as a tenant. The answer affirmatively asserted that she was a tenant from month to month, had paid the rent for October, had tendered the rent for the months of November and December, 1944, but the landlord failed to accept it. That the premises in question came within and were governed by housing regulations of the Emergency Price Control Act of 1942. Before the trial, the tenant filed a motion to dismiss the complaint, attacking its sufficiency, which was overruled.

Upon the trial, it was admitted that in the month of September and until the day of trial the tenant had been in possession of the premises, that the landlord had accepted $75 rent for the month of October, after having notified the tenant that her rights to occupy the premises ceased on the first day of November. The evidence showed that a notice had been given the tenant on the 30th day of October, 1944, to vacate, this being the second notice. This notice was in part as follows:

''The Springfield Area Rent Office of the Office of Price Administration, having authorized an action to be brought for your eviction and removal from the premises which you now occupy, being the second and third floors of the building at Number 302 Olive Street in the city of Springfield, in Greene County, Missouri, where you are now doing business under the style 'Royal Hotel'.

''You are hereby notified to and required to surrender and deliver up to us the quiet and peaceable possession of the above described premises, and to remove therefrom before the first day of December, 1944. It being our intention to substantially alter and remodel the building in which said premises are located, by removing or blocking

off the stairway leading from the first or ground floor of said building which now furnishes access to the second and third floors thereof.

"This notice is given you in accordance with the requirements of the Federal Rent Regulations for Housing as promulgated by the Office of Price Administration, and is not a recognition of any right in you to have entered upon said premises or to remain thereon."

It was also admitted that the tenant did not vacate the premises pursuant to this second notice on the first day of December and had not vacated at the time of trial. There was then offered in evidence by the landlord, the certificate of the Rent Control Office issued to the landlord, which, omitting the formal parts, stated:

"This certificate authorizes the above-named person to pursue his remedies for the removal or eviction of the tenant named below from the above-described accommodations in accordance with the requirements of local law.

"The Rent Director finds that, subject to any conditions stated below, eviction or removal of the tenant is not inconsistent with the purposes of the Emergency Price Control Act of 1942 or of the Rent Regulation issued thereunder for this Defense-Rental Area.

"Conditions:

" 'The purpose for which eviction of the tenant is authorized is not inconsistent with the Act or this Regulation and would not likely to result in the circumvention or evasion thereof.'

"This certificate only authorizes an action to be brought for the eviction or removal of the tenant instituted in accordance with the requirements of local law and does not pass upon the merits of such action under such law."

It was dated October 30, 1944.

It was also admitted by the respective parties that the reasonable rental value of the premises was $75 per month. Thus ended the landlord's evidence.

The evidence on the part of the tenant was that the premises were taken over by her with the knowledge and consent of the landlord, that she had paid to him and he had accepted rent for October in the sum of $75. In this testimony, she was substantiated by another witness. The tenant then offered testimony tending to impeach the certificate of the Rent Control Officer by introducing the application for such certificate in which it was stated:

"Petitioners desire to withdraw the premises from the rental market as a separate unit, so that the same may be rented to the present operators of the Reid Hotel (formerly the Ben Franklin) to be used in connection therewith, for which purpose it was built to match in style and appearance."

To this application was attached a long statement of the history of the property, denying that the tenant was ever accepted by the landlord, never had any contractual relations with him but on October 3,

1944, after the notice to vacate, that the landlord had received from the tenant the sum of $75 for the use and occupancy of the premises for the month of October. The tenant also introduced in evidence record of the registration of the premises with the Office of Price Administration, by the landlord, which was filed in the Area Rent Control Office October 11, 1944, and which listed "Mrs. Cantrell" as the tenant. The petition for registration under the heading: "1. Name of Tenant" contained the following words: "Mollie Cantrell, occupant, petitioners contend—not tenant." The court accepted this evidence tending to impeach the certificate, subject to the strenuous objections of the landlord, stating that it would be admitted and its admissibility passed upon at the close of the case. At the close of the evidence the tenant then requested several declarations of law, the general nature and object of which was to induce the court to declare the law to be that it could look behind the certificate issued by the Rent Control Office to determine its validity and investigate whether it had been issued upon sufficient evidence. These declarations were refused. The court in writing found the facts to be that Mrs. Cantrell was a tenant, that she paid rent for the month of October which was accepted by the landlord, that the landlord applied to the office of Rent Control for a certificate and obtained it, that a proper notice was served upon the tenant on October 30, 1944, requesting her to vacate December 1, 1944. That the defendant did not vacate but was still in possession at the trial; that the tenant offered to pay the rent for November and December which was refused by the landlord and that the monthly rental value of the premises was $75. The court held as a matter of law that it could not inquire into the validity of the certificate or the good faith of the landlord in obtaining the certificate; that Congress had reserved jurisdiction of those matters for the Emergency Court of Appeals and that that court had exclusive jurisdiction of such questions. The court then rendered judgment for the landlord for possession, that he have restitution and for $75 per month rent. From this judgment the tenant appealed.

The question before this court is: Did the trial court have authority to look behind this certificate and ascertain if it was legally issued and upon sufficient evidence and also ascertain and decide whether the landlord was in good faith when he obtained it?

The tenant contends that the trial court had this power. The landlord contends that the trial court was bound by the certificate and could not inquire into its validity, or investigate the evidence upon which it was issued; that the tenant had a statutory administrative remedy to determine those questions and that it was exclusive, except for review by the Emergency Court of Appeals and the Supreme Court.

The answer to this question requires an investigation of the provisions of the Emergency Price Control Act of 1942 (50 U. S. C. A.,

secs. 901 et seq., Act January 30, 1942, C. 26, 56 Stat. 23) and the regulations promulgated by virtue of the authority therein contained. By Section 2 of Title I, of this Act (50 U. S. C. A., 902), the Price Administrator was given authority, by regulation or order, to designate certain rental areas, and to promulgate such regulations relative thereto "as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act." He was empowered to appoint "such employees as he deems necessary in order to carry out the functions and duties under this Act" and "any duly authorized representative may exercise any or all of his powers in any place." [Sec. 201, Title II, as amended, 50 U. S. C. A. 921.]

There was also created by this act the Emergency Court of Appeals and it was given exclusive jurisdiction to review any "regulation, order or price schedule" of the Price Administrator, and the decision of that court could be reviewed by the Supreme Court of the United States by *certiorari.* [50 U. S. C. A. 924, Title II, section 204 (d).]

The pertinent parts of the regulations are found in section 6 relating to housing in Defense-Rental Areas. There is no dispute but that the property in question is within such an area. Those regulatory provisions are:

"Sec. 6. *Removal of tenant*—(*a*) *Restrictions on removal of tenant.* So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithtanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which provides for entry of judgment upon the tenant's confession for breach of the covenants thereof or which otherwise provides contrary hereto, unless:"

Then follows six specific causes for the termination of tenancy which may be summarized as follows:

(1)   Tenant's refusal to renew lease.

(2)   Tenant's refusal of access to landlord.

(3)   Violating obligation of tenancy or committing nuisance.

(4)   Occupancy by subtenants on expiration of tenant's lease.

(5)   Intention in good faith by landlord to demolish, alter or repair, etc.

(6)   Intention in good faith, by landlord to himself occupy the premises.

The foregoing regulations are under subdivision (a) of section 6.

Subdivision (b) paragraph (1) of section 6 reads:

"(b)   *Administrator's certificate*—(*1*) *Removals not inconsistent with act or regulation.* No tenant shall be removed or evicted on grounds other than those stated above unless, on petition of the land-

lord, the Administrator certifies that the landlord may pursue his remedies in accordance with the requirements of the local law. The Administrator shall so certify if the landlord establishes that removals or evictions of the character proposed are not inconsistent with the purposes of the Act or his regulation and would not be likely to result in the circumvention or evasion thereof.''

To proceed in the ejectment of a tenant under section 6 (a) paragraphs 1 to 6 inclusive, no certificate of the Rent Control Office is necessary, but the facts authorizing it must be pleaded and proved. If the proposed eviction is upon grounds other than these, then the landlord must petition for and receive the certificate.

After the making of the order by the Rent Control Office, the tenant had sixty days to file a protest and have its validity passed upon by the Administrator. Within a reasonable time, and in no event more than thirty days after the filing of a protest or ninety days after the issuing of the order, whichever is later, the Administrator's hearing and determination must be had. If aggrieved by the denial of her protest the tenant could have filed a complaint with the Emergency Court of Appeals praying that the order be enjoined or set aside in whole or in part, and that court could not enjoin or set it aside unless the complainant establishes to the satisfaction of the court that it is ''not in accordance with law, or is arbitrary or capricious.'' [Sec. 204 (b), 50 U. S. C. A., 924 (b).] A full and complete remedy was thus afforded the tenant. That this remedy is exclusive cannot be questioned. The Act provides:

''The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2, of any price schedule effective in accordance with the provisions of section 206, and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order or price schedule, or to restrain or enjoin the enforcement of any such provision.'' [50 U. S. C. A., 924 (4d), Title II, sec. 204 (d), Act, June 30, 1942 as amended.]

In Lockerty v. Phillips, 319 U. S. 182, 87 L. Ed. 1339, 63 S. Ct. 1019, an injunction was sought in the United States District Court to restrain the United States Attorney from prosecuting pending and prospective criminal proceedings for alleged violations of regulations of the Price Administrator. It was asserted that the regulations were invalid. The petition was dismissed by a three judge court (28 U. S.

C. A. 380 *a*, 8 F. C. A., Title 28, sec. 380 *a*) and petitioner appealed to the Supreme Court. This dismissal was affirmed, the court saying:

"By this statute Congress has seen fit to confer on the Emergency Court (and on the Supreme Court upon review of decisions of the Emergency Court) equity jurisdiction to restrain the enforcement of price orders under the Emergency Price Control Act. At the same time it has withdrawn that jurisdiction from every other federal and state court. . . . In the light of the explicit language of the Constitution and our decision, it is plain, that Congress has power to provide that the equity jurisdiction to restrain enforcement of the Act, or of regulations promulgated under it, be restricted to the Emergency Court, and, upon review of its decisions, to this Court. Nor can we doubt the authority of Congress to require that a plaintiff seeking such equitable relief resort to the Emergency Court only after pursuing the prescribed administrative procedure."

Again, in Bowles v. Willingham et al., 321 U. S. 503, 64 S. Ct. 641, 88 L. Ed. 628, the Supreme Court in discussing the exclusiveness of the remedy to test the constitutionality of the Act and regulations and the right of the Administrator to procure from a United States District Court an injunction to restrain a state court from preventing the enforcement of "rent orders" of the Administrator said:

"Moreover, by Sec. 204 (d) of the Act, one who seeks to restrain or set aside any order of the Administrator or any provision of the Act is confined to the judicial review granted to the Emergency Court of Appeals, which was created by Sec. 204 (c) and to this Court. As we recently held in Lockerty v. Phillips, 319 U. S. 182, 186, 187, 87 L. Ed. 1339, 1342, 1347, 63 S. Ct. 1019, Congress confined jurisdiction to grant equitable relief to that narrow channel and withheld such jurisdiction from every other federal and state court. Congress thus preempted jurisdiction in favor of the Emergency Court to the exclusion of state courts."

The court held that the District Court had the power to thus enjoin, by virtue of section 205 (a) of the Act and under section 24 (1) of the Judicial Code.

In the case of Yakus v. United States, 321 U. S. 414, 88 L. Ed. 653, 64 S. Ct. 660, Yakus had been convicted of violations of certain regulations of the Office of Price Administration, his convictions had been affirmed by the Circuit Court of Appeals (1st Circuit, 137 Fed. (2d) 850) and the case went to the Supreme Court on *certiorari*. At the trial in the district court, defendant, as a defense, offered to introduce evidence attacking the validity of the regulations alleged to have been violated, which offer was by the trial court denied. The Circuit Court of Appeals reserved its decision on that point but the Supreme Court held that the administrative remedy given by statute for testing the validity of an order or regulation was sufficient and

exclusive, that the trial court was without authority to question its validity, and said:

"No reason is advanced why petitioners could not, throughout the statutory proceeding, raise and preserve any due process objection to the statute, the regulations or the procedure, and secure its full judicial review by the Emergency Court of Appeals and this Court."

Referring to its decision in Lockerty v. Phillips, *supra,* the court further said:

"The considerations which led us to that conclusion with respect to the equity jurisdiction of the district court, lead to the like conclusion as to its power to consider the validity of a price regulation as a defense to a criminal prosecution for its violation. The provisions of 204 (d), conferring upon the Emergency Court of Appeals and this Court 'exclusive jurisdiction to determine the validity of any regulation or order,' coupled with the provision that 'no court, Federal, State or Territorial, shall have jurisdiction or power to consider the validity of any such regulation,' are broad enough in terms to deprive the district court of power to consider the validity of the Administrator's regulation or order as a defense to a criminal prosecution for its violation."

In Falbo v. United States, 320 U. S. 549, 64 S. Ct. 346, 88 L. Ed. 248, it was held that one charged with criminal violations of an order of his draft board may not challenge the validity of the order if he has failed to pursue to completion the exclusive administrative remedies provided by the Selective Training and Service Act of 1940.

In the case before us, the Certificate was procured from the Rent Control Office on October 30, 1944. Notice to vacate was served on the tenant on the same day and that notice asserted the issuance of the certificate. The suit was filed in the justice court on December 2, 1944, transferred to the circuit court, December 7, 1944, and tried on December 11th. The complaint asserted the issuance of the certificate. During all this time, no action was taken by the tenant to pursue the statutory administrative remedy and show, if in fact she could, the invalidity of the order.

Appellant argues that the landlord is proceeding under Regulation Sec. 6 (a) (5), which provides:

"*Demolition or alteration by landlord.* The landlord seeks in good faith to recover possession for the immediate purpose of demolishing the housing accommodations or of substantially altering or remodeling it in a manner which cannot practically be done with the tenant in occupancy and the plans for such alteration or remodeling have been approved by the proper authorities, if such approval is required by local law;"

The complaint does not sustain this argument. It is true that the notice served on the tenant states that the landlord intends to substantially alter and remodel the premises by removing and blocking

692

the stairway but this was an unnecessary part of the notice in view of the fact that in the complaint the landlord relied explicitly and exclusively upon the Certificate of the Rent Control Office. If the procurement of the certificate was not in good faith, the tenant had her remedy as above outlined.

Appellant in her Reply Brief asserts that she seeks to "explain" but not to "contradict, invalidate or review" the certificate, and states, "it is obvious that the requisite good faith of the landlord in obtaining the certificate may be attacked without in the least impeaching its validity."

If the certificate was valid, then the landlord should prevail regardless of any explanation. If it was not valid, the tenant should have attacked it in the statutory manner, and not collaterally, as here, and in a court that had no jurisdiction to inquire into its validity.

The cases of Jones v. Shields (Cal.), 146 Pac. (2d) 735, and Wrenn v. Sutton (Cal.); 150 Pac. (2d) 589, are in accord with out views herein expressed. In the case of Cosgrove v. Jones (Okla.), 154 Pac. (2d) 55, relied upon by appellant, both sides proceeded upon the theory that the trial court could determine the validity of the certificate and whether it was procured in bad faith and by fraud. Its right to do so was not challenged and evidence was produced *pro* and *con.* The trial court directed a verdict for the landlord and the Supreme Court of Oklahoma held it should have been submitted to the jury. Apparently the jurisdiction of the trial court to make the inquiry was not raised either at the trial or on appeal.

We hold that the trial court in this case had no jurisdiction to pass upon the questions, whether the certificate was supported by sufficient evidence or whether it was procured without good faith on the part of the landlord. Its judgment, therefore, is affirmed. *Fulbright, P. J.,* and *Blair, J.,* concur.