McBRIDE, Judge.
Mary Blanchard, plaintiff, brought this suit in damages for $2,000 against Richard Kemp, her former landlord, “for the forcible ejection of your petitioner from the *640 premises 1325 Saratoga Street.” She alleges that she moved from the said premises, which she held under lease from Kemp, the owner, after an ejectment suit had been filed against her by Kemp in the First City Court of New Orleans, which suit was grounded upon a certificate relating to eviction which Kemp had obtained from the Area Rent Director of the Office of Housing Expediter. She charges that Kemp in bad faith secured the certificate which authorized the suit against her, in that he made fraudulent representations to the Area Rent Office in his application for the certificate.
The defendant first filed exceptions of no cause or right of action, which were overruled by the court a qua. He then answered the suit, setting forth several defenses, one of which is that he was and has always been in good faith with reference to the securing of the certificate and his occupancy of the premises.
The trial of the case on its merits below culminated in a judgment in plaintiff’s favor for $250, from which defendant has taken this appeal.
We find the undisputed facts of the case to be these: Mary Blanchard, as lessee under a verbal lease, together with her ’‘common law husband” and her child, occupied the rear three rooms of the five room house bearing municipal number 1325 South Saratoga Street, at a weekly rental of $3.50. The property is one-half of a double house, and the five rooms thereof constitute one unit.
Kemp, the defendant, acquired the property during April of 1949, and we gather from the record that the tenant in the front two rooms vacated shortly after his acquisition. On April 18, 1949, Kemp made application to the Area Rent Director for a certificate authorizing him to pursue his remedies in accordance with the requirements of the local law for the removal or eviction of Mary Blanchard from the rear three rooms, on the ground that he desired the same for his personal use and occupancy as a dwelling as owner thereof. The certificate relating to eviction was issued by the Area Rent Director on May 23, 1949, and authorized Kemp to bring an action under the local law against Mary Blanchard for possession, it being stipulated in the certificate, however, that no action was to be commenced sooner than three months counting from April 18, 1949.
On July 29, 1949, Kemp filed his ejectment suit against Mary Blanchard in the First City Court of New Orleans, where it was docketed under the number 345-676. On August 2, 1949, at which time the rule for possession was pending for trial, Mary Blanchard, believing that Kemp was in good faith in bringing his action against her, and was entitled by law to the possession of the premises for his own personal use and occupancy as a dwelling by virtue of the certificate relating to eviction, a copy of which had been previously served upon her, voluntarily vacated the three rooms and moved her furniture and belongings therefrom. About two weeks afterward, Kemp, with his wife and daughter, moved into the three rooms formerly occupied by Mary Blanchard, and about three weeks later he rented two of the three rooms to two roomers, at a weekly rental of more than double that which had been paid by Mary Blanchard for the three rooms.
At the outset, defendant reurged and argued to us his exceptions of no cause or right of action, which had been overruled by the lower court, and insists upon a maintenance thereof. The exceptions seem to be leveled at an insufficiency of allegations in the petition, and this being the case, and in view of the conclusion we have reached on the merits, the testimony in the case being before us, no prejudice to defendant could possibly result from our not passing on the exceptions, and we shall not do so.
The Housing and Rent Act of 1947, as amended, 50 U.S.C.A. Appendix, § 1899, provides that the Housing Expediter may, by regulation or order, regulate or prohibit speculative or manipulative practices or renting or leasing practices, including practices relating to recovery of possession, of controlled housing accommodations. Under the authority so conferred by the act, the Office of Housing Expediter, on April 1, 1949, promulgated rent regula *641 tions which, so far as material to this case, provide that so long as the tenant continues to pay the rent to the landlord, no tenant shall be removed from any housing accommodation by action to evict or to recover possession, unless “825.6(c) * * * on petition of the landlord the Housing Expediter certifies that the landlord may pursue his remedies in accordance with the requirements of the local law. The certificate shall authorize the pursuit of local remedies at the expiration of” (825.6(c) (5) (d)) three months from the date of the filing of the petition in the event the landlord seeks to recover possession for his immediate and personal use and occupancy as housing accommodations.
Section 205 of the act, 50 U.S.C.A. Appendix, § 1895, makes provision for the assessment of severe civil damages against any landlord who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed, but nowhere is it provided in the act, or in the regulations issued thereunder, that there shall be available to any tenant a civil remedy in the event that the certificate authorizing the eviction of the tenant was wrongfully or fraudulently obtained from the Housing Expediter.
At the time the Housing and Rent Act was enacted, 50 U.S.C.A. Appendix, § 1-881 et seq., Congress, according to the act, recognized that .an emergency existed, and that for the prevention of inflation and for the achievement of a reasonable stability in the general level of rents, it was necessary for a limited time to impose certain restrictions upon rents charged for -rental housing accommodations in defense rental areas. 'By the regulations adopted by the Housing Expediter pursuant to the authority vested in him, the occupancy and possession of a tenant seems to have been strengthened, and a tenant was protected to the extent that a landlord was forbidden to maintain any eviction proceedings, except for those grounds specifically provided for in the regulations, and only then after the landlord had secured from the Housing Expediter a certificate authorizing ouster proceedings against the tenant pursuant to the state laws.
Even if we assume that the plaintiff’s petition herein sets forth a cause of action against the defendant with reference to the securing of the certificate relating to eviction, to be successful the plaintiff was bound to prove that the defendant secured the_ certificate through representations made in bad faith, which is purely a question of fact. Nowhere in the written reasons assigned by the lower court for judgment is there contained a finding that Kemp acted in bad faith. The judgment seems to have been predicated upon an opinion given by a clerk from the Office of Housing Expediter, who testified as a witness for plaintiff.
The Housing and Rent Act provides, in Sec. 206(d), 50 U.S.C.A. Appendix, § 1896(d): “No person shall be liable for damages or penalties in any Federal, State, or Territorial court, on any grounds for or in respect of anything done or omitted to be done in good faith pursuant to any provision -of this Act or any regulation, order, or requirement thereunder, * *
R.C.C. art. 1848 states: “Fraud, like every other allegation, -must be proved by him who alleges it, but it may be proved by simple presumptions or by legal presumptions, as well as by other evidence. The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence.”
Under the jurisprudence of Louisiana, fraud and bad faith are never imputed, except on legal and convincing evidence produced by the one alleging it. Strauss v. Insurance Co. of North America, 157 La. 661, 102 So. 861; Garnier v. Aetna Ins. Co. of Hartford, Conn., 181 La. 426, 159 So. 705.
When Kemp purchased the property, and also at the .time he made application to the Area Rent Office for the certificate relating to eviction, his family consisted of, besides himself, his mother, wife, daughter, and sister. He testified that it was his intention to move his furniture into the five rooms at 1325 South Saratoga *642 Street, so that the premises could serve as a home for himself and the members of his family. It seems that his mother and sister were not members of his household, but lived in another house somewhere in the vicinity of the proposed new Union Station in New Orleans, and that they had been informed that they would have to quit the quarters in which they were living because the house was about to be sold. After Mary Blanchard moved from 1325 South Saratoga Street, it developed that the house in which Kemp’s mother and sister lived would not be sold, and that they would not accompany him into the Saratoga Street house. He, his wife and his daughter, about two weeks after Mary Blanchard left, moved into the premises, and a week or so later his daughter left for school somewhere in Pennsylvania, which left the premises occupied by only Kemp and his wife. About three weeks or so after Kemp moved in, he rented the two rear rooms, furnished, to two roomers, whose aggregate rent amounted to $9 per week.
It cannot be concluded from Kemp’s testimony, or from the record as a whole, which we have carefully analyzed, that Kemp was guilty of bad faith in securing authority from the Area Rent Director to evict Mary Blanchard from the leased premises. It is conceded by plaintiff’s counsel that neither the Housing and Rent Act nor the regulations adopted thereunder, make any provision as to the status of a landlord whose condition changes after he has ousted his tenant from the leased premises in accordance with a certificate relating to eviction issued by the Area Rent Director.
We are convinced that the reason assigned by Kemp for his mother and sister not moving into 1325 South Saratoga Street as members of his family is bona fide. There is nothing in the record to impugn his testimony that the sole reason for their not coming to live with him was because the house in which they were living would not be sold and they preferred to reside there. It appears that the mother and sister were tenants of the whole of the house they occupied, and rented part of it out, receiving a revenue thereby. The mere fact that Kemp’s mother and sister did not move with him into the premises is insufficient in itself to warrant a holding that Kemp was guilty of fraud or bad faith in connection with his seeking to oust Mary Blanchard from the leased premises.
Furthermore, the fact that Kemp rented two furnished rooms to two roomers is not an indicium of bad faith. Indeed, Sec. 202(c) (4) of the act, 50 U.S.C.A. Appendix, § 1892(c) (4) provides that the term “controlled housing accommodations” does not include: “nonhouse-keeping, furnished housing accommodations, located within a single dwelling unit not used as a rooming or boarding house, but only if (A) no more than two paying tenants, not members of the landlord’s immediate family, live in such dwelling unit, and (B) the remaining portion of such dwelling unit is occupied by the landlord or his immediate family.”
Lest it appear from the above quoted provision that the accommodations in question were never within the purview of the federal act, and that for this reason defendant’s exceptions should have been maintained, our answer is that the petition alleges that the accommodations were controlled, and that the owner so considered them to be, because he applied to the Area Rent Office for permission to eject his tenant, Mary Blanchard.
It did not develop until the case was heard on its merits that the accommodations which Kemp rented after Mary Blanchard removed were rented furnished to not more than two paying tenants not members of the landlord’s immediate family. It was these facts, when they presented themselves in the evidence, which might have justified the conclusion that the act had no application to these particular accommodations, but those facts were not alleged in the petition. All that the petition did allege was that the accommodations were rented by Kemp to two tenants. Taking this allegation as being true, the accommodations appeared to have been subject to the act, and there were no facts to show *643 the contrary until the case was tried on its merits.
The judgment appealed from is reversed, and plaintiff’s suit is dismissed.
Reversed.