### HUNTER v. ROBERTS et al.
#### No. 28731.

St. Louis Court of Appeals.
Missouri.

April 20, 1954.

Louis Shifrin and Shifrin, Shifrin & Agatstein, St. Louis, for defendants-appellants.

·Joseph T. Hersby, St. Louis, for respondent.

BENNICK, Judge.

This is an action for damages growing out of the eviction of a tenant from· premises subject to rent control pursuant to a certificate issued by the Area Rent Director upon alleged false and fraudulent representations of the defendant landlords regarding the purpose for which they sought possession of the premises.

The accommodations in question—a single rental unit of eleven rooms—comprised the second floor of premises known as 1801–03 Delmar Boulevard in the City of St. Louis, which had been acquired by defendant landlords, Paul Roberts and Fannye Roberts, his wife, in 1946. Plaintiff tenant, William C. Hunter, did· not occupy the premises. for his own living quarters, but instead equipped the rooms with carpets, furniture, and the like, and rented them out to others at a profit to himself. He paid defendants a monthly rental of $57.50, which was·the maximum rent authorized by the Area Rent Office. ·

On October 5, 1950, defendants made application to the Area Rent Director for a certificate authorizing the institution of

proceedings for plaintiff's eviction in order that they might undertake the remodeling and alteration of the premises into eight separate efficiency apartments.

The housing regulations in effect at the time provided that a certificate of eviction might be granted whenever a landlord sought in good faith to recover possession of his premises for the immediate purpose of substantially altering or remodeling the housing accommodations so as to create additional self-contained family dwelling units, provided the landlord had obtained such approval for the proposed alterations or remodeling as might be required by law, and provided further that such alterations or remodeling could not practically be made or done with the tenant in occupancy.

The application for the certificate had been prepared by one Eugene C. Walter, an employee of Cornet & Zeibig, Inc., a real estate concern which acted as defendants' agent, and was accompanied by a building permit which had been obtained from the proper authorities of the City of St. Louis.

On November 9, 1950, the Area Rent Director sustained defendants' application, subject only to the condition that any court proceeding to evict plaintiff should not be instituted before January 5, 1951. Thereafter defendants caused notice to be given plaintiff to vacate by February 1, 1951, and on January 29th their agent, Walter, wrote plaintiff inquiring whether they might expect possession by such date.

It appears that plaintiff's delay in surrendering the premises was due to the difficulty which his roomers were having in finding other quarters. As a matter of fact, it was not until the end of February, 1951, that he was able to turn the premises over to defendants. Meanwhile he had consulted Walter on two occasions, the first after service of a notice to vacate, and the second, upon receipt of the letter of January 29th, and according to Walter's testimony had been given an extension of time.

Plaintiff testified that in all the proceedings leading up to his surrender of the premises he had believed and relied upon defendants' representations that they desired possession for the purpose of doing substantial altering and remodeling which they could not do so long as the premises were occupied.

Defendants' evidence was to the effect that after consultation between defendant Paul Roberts and a contractor named Wolf, the latter had submitted a written proposal in September, 1950, for remodeling the premises so as to convert what was a single unit of eleven rooms into eight separate units of two rooms each. The total cost of the proposed work was to be $6,700. According to Wolf's testimony, it was upon the basis of such proposal that he obtained the permit at City Hall which was attached to the application to the Area Rent Director for a certificate authorizing plaintiff's eviction.

Explaining why his initial proposal had not ripened into a contract, Wolf testified that it was himself, and not Roberts, who had refused to execute a contract, his reason being that he was unwilling to close the transaction until such time as he could see the interior of the premises. However he was again contacted by Roberts in March, 1951, after the premises had been vacated, and then drew up a contract which was entered into as of April 12, 1951, for the remodeling and alteration of the premises at a cost of $5,576. Continuing his account of what had transpired, Wolf testified that because of shortages and governmental restrictions he could not purchase the materials which were necessary for the performance of the contract, and consequently canceled the same and then on May 17, 1951, entered into an entirely new contract with Roberts which was limited solely to exterior work. The only interior work that was ever done under the prior contract had consisted of the removal of some gas pipes and window casings, although later, in July, 1951, Wolf did some necessary minor repairs to the interior, such as the bringing in of

water and the taking down of certain plastering that would have been hazardous to an occupant.

Defendant Paul Roberts died on October 29, 1951, while this action was pending, and thereafter, on plaintiff's motion, it was ordered that his wife, Fannye Roberts, the executrix of his estate, be substituted as a party defendant in his stead. This meant that the action was thenceforth to be defended by Fannye Roberts in two separate capacities, the one, individually, and the other, as her deceased husband's personal representative.

Fannye Roberts testified that during her husband's lifetime, although she had known of his plans, she had had no part in the negotiations for the alteration and remodeling of the premises; and that after her husband's death, her lack of funds, coupled with ill-health, had prevented her from pursuing the matter until the spring of 1952 when she decided to renew the efforts to convert the premises into self-sustaining small units. She then consulted Walter at the office of Cornet & Zeibig, Inc., and procured his assistance in the completion of the work, which was not done under any general contract, but was accomplished through the employment of individual carpenters, plumbers, electricians, and the like. The result was to change the premises into six separate units, after which Walter registered the units with the Area Rent Office after the tenants had taken possession.

Plaintiff's evidence, considered along with numerous undisputed facts upon which he relied, tended to put the whole transaction in a very different light than that which defendants were endeavoring to show.

According to plaintiff's testimony, it was only two to four weeks after he had vacated the premises that he saw "for rent" signs on the building; and it was admitted that in May, 1951, the premises were let to two tenants, Chatman and Alexander, at a monthly rental of $50 each. In other words, the identical premises for which plaintiff had paid a monthly rental of $57.50 were now rented out for a total of $100 a month, and were so registered with the Area Rent Office. However the Area Rent Office shortly found that such rent was in excess of the maximum that could legally be charged, and ordered it reduced from $50 a month to $26 a month for each apartment. Incidentally, it had been Chatman who had complained to the housing authorities about the excessive rent that was being exacted, and only two months after the owners had been ordered to make an adjustment he was served with a notice to vacate upon the same ground as that assigned in plaintiff's own case—that possession was desired for the purpose of making substantial alterations.

This action was instituted on July 21, 1951, and the basic issue under the pleadings was whether possession of the premises had actually been sought by defendants in good faith for the immediate purpose of substantially altering or remodeling the interior of the premises in a manner and to an extent that could not be done with the tenant in occupancy.

Plaintiff sought actual damages of $1,600 and punitive damages of $2,500.

Tried to a jury, a verdict was returned in plaintiff's favor for actual damages of $900 and punitive damages of $700.

Later, on motion for a new trial, the court ordered a remittitur of $800 from the amount of the actual damages, and caused a new judgment to be entered in plaintiff's favor for the aggregate amount of $800. Notwithstanding the remittitur, defendants still gave notice of appeal, and by subsequent successive steps have caused the case to be transferred to this court for our review.

The burden of defendants' complaint on this appeal is that the court was in error in denying their motion to dismiss at the close of the entire case.

█ In an action of the character of the one at bar, the tenant makes out a

case for the jury when he produces substantial evidence to show that his eviction was made possible by the fraudulent representation of his landlord to the housing authorities regarding the purpose for which possession of the premises was sought. Bedell v. Daugherty, 362 Mo. 598, 242 S.W.2d 572.

■ The truth or falsity of the representation must of course be determined as of the time when it was made by the landlord and was relied and acted upon by the tenant; and if it be established that the representation was true when made, then any subsequent change of purpose made in good faith is not material to the transaction. Powers v. Shore, Mo.Sup., 248 S.W.2d 1; Meriwether v. Lumbard, Mo.App., 246 S.W.2d 363.

■ There is no doubt that defendants made a case in their defense which, on its face, if it had been believed and accepted by the jury, would have refuted the idea that they had been guilty of any fraud in representing to the Area Rent Office that they desired possession of the premises for the immediate purpose of substantially altering and remodeling their interior. Moreover it must be conceded that plaintiff did not have any direct evidence which positively and unequivocally disclosed the fraud upon which he relied. It is to be borne in mind, however, that fraud is seldom susceptible of proof by direct evidence, but must almost invariably be shown by circumstances surrounding the transaction from which the fraud of the one charged with its commission may be reasonably inferred. Fraud of course is never to be presumed; and before evidence may be taken as reasonably supporting an inference of fraud, it must rise above mere suspicion and point logically and convincingly to that conclusion. Powers v. Shore, supra; Meriwether v. Lumbard, supra.

■ In this case it was strange to say the least that what purported to be Wolf's initial written proposal for remodeling the premises was neither signed nor dated. In fact, what is still even more strange is the suggestion that defendant Paul Roberts later undertook to accept the proposal and then found that Wolf was unwilling to enter into an actual contract conforming to the proposal he had made. Businessmen do not ordinarily conduct their affairs in such a fashion, and the jury were entitled to consider the unreality of such account of the transaction in determining whether Roberts and Wolf had actually consulted together in good faith for the immediate purpose of remodeling the premises, or whether, on the contrary, any dealings between them had been merely for the purpose of lending color to the idea that defendants desired possession of the premises upon an assigned ground that would warrant the issuance of a certificate of eviction, when their true purpose in getting possession was to set the stage for an increase in rent.

It is significant in this connection that "for rent" signs appeared on the building within a period of from only two to four weeks after plaintiff had vacated the premises, and that in approximately two months the premises were rented to two new tenants, unaltered and unremodeled, but at a rent far beyond the maximum that could legally be charged with the consequence that the Area Rent Office was compelled to order its reduction.

Not only did defendants never contract with Wolf upon the basis of the proposal upon which they claim to have relied in support of their application for an order authorizing plaintiff's eviction, but when they did subsequently enter into a modified contract as of April 12, 1951, this contract itself was never performed. It is true that Wolf offered the explanation that shortages and governmental restrictions had precluded his purchase of the necessary materials for the performance of the contract, but his testimony was wholly unsupported and uncorroborated, and the jury were under no compulsion to believe it.

■ We are not to be understood as holding that the mere disbelief of defend-

ants' evidence would of itself have entitled the jury to find that the contrary was the truth. All that we are saying in this regard is that defendants' evidence was in no sense conclusive upon the facts in issue. We are fully mindful that the burden was on plaintiff to prove defendants' fraud as an affirmative fact, but this he did by showing the several circumstances already mentioned, which, when combined together, furnished a sufficient basis from which fraud might be reasonably inferred. In our review of the case on this appeal we are expressing no personal opinion whatever upon the truth or falsity of any of the evidence, but are only holding that the evidence sufficed to make a case for the jury, which the jury resolved in plaintiff's favor.

■ For their final point defendants contend that the order of the court directing a remittitur should have specifically mentioned that the sum remitted was to be deducted from the award of actual damages. While the order did not contain such direction in express words, the court's memorandum shows that this was what was actually done. Defendants therefore obtained all the relief to which they were entitled, and consequently have no present cause for complaint.

■ Since there was a case for the jury upon the issue of actual damages, there was no error in the allowance of punitive damages, the amount of which defendants do not question.

Along with the case has been taken plaintiff's motion to dismiss the appeal upon the ground of defendants' alleged nonobservance of the rules in certain particulars. This motion has been considered, and may be overruled.

The judgment of the circuit court should be affirmed, and it is so ordered.

ANDERSON, P. J., and BROADDUS, Special Judge, concur.