DUVALL et ux. v. STOKES (two cases).

Nos. 7224, 7225.

Springfield Court of Appeals.

Missouri.

July 17, 1954.

Roscoe C. Patterson and Kirby W. Patterson, Springfield, for defendant-appellant.

Lincoln, Lincoln, Haseltine & Forehand, Wallace N. Springer, Jr., and Leland C. Bussell, Springfield, for plaintiffs-respondents.

STONE, Judge.

This action arises out of eviction of plaintiffs from defendant's house at 613 West Dale Street in Springfield, Missouri, during the Fall of 1951 when those premises were "controlled housing accommodations" subject to the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1891 et seq. Defendant took separate appeals, which have been consolidated, from the judgment for plaintiffs in the sum of $50 on Count I of plaintiff's petition and the judgment in the additional sum of $200 for attorneys' fees entered upon plaintiffs' after-trial motion. 65 Stat. 147, Sec. 204(b), 50 U.S.C.A.Appendix, § 1895 (b). On the appeal from the judgment upon plaintiffs' petition, the sole issue is as to the sufficiency of the evidence to support the judgment.

For a period of several years prior to December 30, 1951, plaintiffs and their children occupied the 5-room dwelling at 613 West Dale Street as tenants of defendant. At all times herein material, the tenancy was on a month-to-month basis. On September 15, 1951, defendant filed with the Area Rent Office in Springfield a "Petition For Certificate Relating To Eviction" (hereinafter sometimes referred to as "defendant's petition"), in which defendant stated: "I desire possession of the property for reason 3 alterations and remodeling. I plan to tear out a petition (sic) and throw the living and dining room into one. Sand and finish all the floor. Have asbestos tiling put on the kitchen floor, put up venetian shades. I have not contracted any work or purchased any material. Will begin work immediately." On September 26, 1951, the Area Rent Director issued a "Certificate Relating to Eviction" (hereinafter sometimes referred to as "the certificate"), the pertinent portions of which were as follows:

"This Certificate authorizes *Mrs. Ida B. Monday* to pursue his (sic) remedies for the removal or eviction of the Tenant named above from the above-described accommodations in accordance with the requirements of the local law. * * *

"Conditions

"The purpose for which eviction of the tenant is authorized is *solely for the purpose of altering and remodeling to such an extent that a tenant could not remain in occupancy while the work was being done.* Action to remove or evict the Tenant shall not be commenced sooner than *three months from September 15, 1951.*

" * * * This Certificate shall remain in effect unless and until changed by the Housing Expediter or the Certificate is otherwise suspended in accordance with Rent Procedural Regulation 2. * * *

"Notice to Court and Landlord. This Certificate shall not be effective to authorize the eviction of the Tenant herein named under the Rent Regulations for any purpose other than that stated above. * * * If the Landlord fails to observe the provisions of this Certificate of the Rent Regulations he is subject to civil action as provided for in the act."

Believing it necessary to vacate by reason of the certificate, plaintiffs purchased a home about November 1, 1951, and thereafter moved on December 30, 1951. No suit for possession was instituted. After defendant's house had been vacated, extensive repairs and alterations were made during January, 1952, before other tenants moved into the house about the first of February, 1952. Although plaintiffs offered no evidence as to what repairs and remodeling were done in the house after they vacated (excepting only that the partition between the living room and the dining room was not removed), the record contains detailed evidence offered by defendant, and in no wise disputed or contradicted by plaintiffs either in the trial court or upon appeal, as to the nature, character and extent of the work actually done. According to the witnesses, the floors throughout the house were sanded, filled and revarnished, asphalt tile was laid on the kitchen and bathroom floors, involving removal of the bathroom fixtures (which were outside the room for a period of days not definitely shown), the bathroom stool was repaired, the plastering was patched, all of the walls were given two coats of kemtone, all of the woodwork was refinished with two coats, a new gas floor furnace was installed, new electrical fixtures were hung, a new electrical outlet was wired into each room, the cabinet tops were recovered and chrome trim was placed around them, the upper half of the bathroom was papered, the faucets in the lavatory, bathtub and sink were replaced, a flue and an open space (about one yard square) in a closet were closed, new flooring was laid over open vents from the old coal furnace which had been removed, a new sash was put in the basement, the front door was repaired where the lock had been removed leaving an opening, and the garage was braced and covered with a new roof. Plaintiffs' brief lists most of the above alterations and remodeling and plaintiffs' counsel say that "it is uncontradicted" that they were made.

The gist of plaintiffs' complaint is that, in defendant's petition, she said that "I plan to tear out a petition (sic) and throw the living and dining room into one"; "that defendant did willfully misrepresent her reasons for eviction in that she at no time intended to remove said partition * * * and * * * the Area Rent Director would not have granted the certificate * * * in the absence of said allegation"; but, that the partition was not removed, although admittedly other repairs and alterations not mentioned in defendant's petition were made. Defendant's explanation about the partition was that, although she intended to remove it when she filed her petition, although she directed her son (who cared for this and other rental properties owned by defendant and who was in charge of the work done at this dwelling) to remove the partition, and although she never countermanded that direction to her son, the partition was not removed because defendant's son, in accordance with advice given to him by a contractor who inspected the premises and installed the gas floor furnace, decided that the partition should not be removed for several reasons, viz., that it would leave the plastering and flooring "looking patched up", that removal of the partition would weaken the house to some extent, and that, if the living room and dining room were thrown together, that room would be so much larger than the other rooms that "it would make the house look out of proportion."

It appears to be settled and no longer open to question in this state that an aggrieved tenant induced to vacate "controlled housing accommodations" by reason of his landlord's false representations may, upon appropriate pleadings and adequate proof, recover damages in a common law action for fraud and deceit, whether such false representations may have been made to the Area Rent Director or to the tenant and whether or not the landlord thereby may have procured issuance of a certificate relating to eviction. Bedell v. Daugherty, 362 Mo. 598, 242 S.W.2d 572; Meriwether v. Lumbard, Mo.App., 246 S.W.2d 363, 365 (1); Hunter v. Roberts, Mo.App., 267 S.W.2d 368. In any such suit for fraud and deceit, each of the essential elements of that cause of action must be pleaded and

proved; and, although it is recognized that fraud is seldom susceptible of proof by direct evidence and usually must be shown by circumstances [Hunter v. Roberts, supra, 267 S.W.2d loc. cit. 372(3) ; Meriwether v. Lumbard, supra, 246 S.W.2d loc. cit. 367], "[f]acts and circumstances which lead only to a suspicion of fraud or facts and circumstances as consistent with honesty and good faith as with fraud are insufficient to make out a case for the jury." [Powers v. Shore, Mo.Sup., 248 S.W.2d 1, 6(8)]. Likewise, "[i]f the expression of a state of mind or an existing purpose was true when made and was made in good faith then any subsequent change of purpose made in good faith is not material to the transaction." Powers v. Shore, supra, 248 S.W.2d loc. cit. 6(7). See also Hunter v. Roberts, supra, 267 S.W. 2d loc. cit. 372(2).

■ Prior to amendent of the Housing and Rent Act as of July 31, 1951, a tenant wrongfully evicted from "controlled housing accommodations" could seek civil relief only in a common law action for fraud and deceit, for the Act theretofore conferred no right of action for damages for wrongful eviction. 1951 U.S.Code Cong. & Adm. Service, pp. 1650, 1662; Cato v. Silling, W.Va., 73 S.E.2d 731, 742–743(7) ; Crawford v. Pituch, 368 Pa. 489, 84 A.2d 204, 206(2) ; Blanchard v. Kemp, La.App., 51 So.2d 639, 641. However, the Act as amended in 1951 [50 U.S.C.A.Appendix, §§ 1895(b) and 1896(a) (2)], clearly created and thereafter provided a statutory right of action for liquidated damages, attorney's fees and costs for unlawful eviction, similar to the statutory right of action theretofore provided for rental overcharges. Although we have found only one reported case in which a former tenant has, *for wrongful eviction,* sought to recover liquidated damages, attorney's fees and costs under the Act, Foss v. Ziton, Minn.1954, 64 N.W.2d 47, the nature and basis of the right of action created and conferred by the statutes are perfectly plain from the language of the legislative enactment.

Section 204(b) [50 U.S.C.A.Appendix, § 1895(b)], provides that "Any person who unlawfully evicts a tenant shall be liable to the person so evicted * * * for reasonable attorney's fees and costs as determined by the court, plus liquidated damages in the amounts of (1) one month's rent or $50, whichever is greater, or (2) not more than three times such monthly rent, or $150, whichever is greater: *Provided,* That the amount of such liquidated damages shall be the amount of one month's rent or $50, whichever is greater, if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation." And, the pertinent portion of Section 205(a) (2) [50 U.S.C.A.Appendix, § 1896(a) (2)] clearly defines an "unlawful eviction": " * * * any person who lawfully gains possession from a tenant of any controlled housing accommodations, and thereafter fails fully to comply with such requirements or conditions as may have been imposed for such posseesion by the provisions of this Act or any regulation, order, or requirement thereunder, shall also be deemed to have unlawfully evicted such tenant and shall be liable to such tenant * * * as provided in this Act."

■ Determination of the nature of the cause of action alleged in Count I of plaintiffs' petition "is based upon construction of the complaint." Williams v. Illinois Cent. R. Co., 360 Mo. 501, 229 S.W.2d 1, 2(3), 20 A.L.R.2d 322. "The form of the action is determined by the substance of the petition." Webster v. Sterling Finance Co., 351 Mo. 754, 173 S.W.2d 928, 931. See also White v. Scarritt, 341 Mo. 1004, 111 S.W. 2d 18, 21(4) ; 1 C.J.S., Actions, § 46, p. 1100. And, although our courts have on several occasions "loosely stated the prayer is no part of the petition"—a thought "more accurately expressed by saying the relief prayed for is no part of plaintiff's cause of action" [Menke v. Rovin, 352 Mo. 826, 180 S.W.2d 24, 26(2, 3)]—"in determining the cause of action intended to be pleaded under the new code, we may consider the facts pleaded and relief sought." [Kemp v. Woods, 363 Mo. 427, 251 S.W.2d 684, 688 (4)]. As has always been true [O'Donnell

v. Baltimore & O. R. Co., 324 Mo. 1097, 26 S.W.2d 929, 935(17), and cases there cited; State ex rel. Brinkman v. McElhinney, Mo.Sup., 216 S.W. 521, 524(1)], if "the allegations of fact are ambiguous or susceptible of two constructions, the prayer may be looked to for the purpose of ascertaining the intention of the pleader." [St. Louis 221 Club v. Melbourne Hotel Corp., Mo. App., 227 S.W.2d 764, 770(16), and cases there cited].

■ With the foregoing in mind, consideration of Count I of plaintiffs' petition (in the prayer of which "plaintiffs demand judgment * * * for liquidated damages in the amount of One Hundred Fifty Dollars * * * together with reasonable attorney's fees") leaves no room for doubt but that, as their counsel insist, plaintiffs intended and undertook to state in Count I a cause of action directly and squarely predicated upon the Housing and Rent Act [50 U.S.C.A.Appendix, §§ 1895(b) and 1896(a) (2)], rather than a common law cause of action for fraud and deceit.[1] This conclusion is confirmed by the fact that plaintiffs obviously intended and undertook to state in Count II (dismissed in response to defendant's motion to elect at the close of plaintiffs' evidence) a common law action for fraud and deceit in which they sought actual damages of $2,055.66. Furthermore, it is evident from the instructions that the issue submitted to the jury was defendant's liability vel non for alleged unlawful eviction of plaintiffs under the Act.

■ The only question for determination under plaintiffs' statutory cause of action for unlawful eviction was as to whether defendant, having "lawfully [gained] possession from a tenant * * * thereafter [failed] fully to comply with such requirements or conditions as may have been imposed for such possession by the provisions of this Act or any regulation, order, or requirement thereunder". And, the

only such "requirement" or "condition", with which plaintiffs assert that defendant failed fully to comply, was the "condition" in the certificate that eviction was authorized "solely for the purpose of altering and remodeling to such an extent that a tenant could not remain in occupancy while the work was being done." Therefore, this case turns upon the sole and narrow issue as to whether or not the dwelling in question was altered and remodeled "to such an extent that a tenant could not remain in occupancy while the work was being done." In urging that they made a submissible case on this issue, plaintiffs assert, among other things, that we should consider (a) "only those repairs * * * which were contemplated by defendant at the time she filed her petition" (apparently meaning only those items specifically listed in her petition, for defendant testified that, when the petition was filed, she "planned" to make all of the additional repairs later made), (b) "by way of background", conversations between the parties and alleged attempts to evict plaintiffs prior to issuance of the certificate, and (c) that plaintiffs "would have been willing to remain in the house while repairs were taking place."

■ There is no suggestion that the certificate was ever "changed by the Housing Expediter or * * * otherwise suspended," or that plaintiffs endeavored to pursue any administrative remedy for the purpose of attacking the validity of the certificate or questioning defendant's good faith in obtaining it. The certificate is not subject to collateral attack in this action [Sviadas v. Seelig, 239 Mo.App. 1121, 202 S.W.2d 543, 546–547(1–3)]; and in developing their submitted theory of alleged unlawful eviction under the Act, plaintiffs had no right to inquire into the question of whether defendant had acted fraudulently or in bad faith in procuring issuance of the certificate [Horton v. Cantrell, 238 Mo.App. 681, 187 S.W.2d 860(2); F. A.

1. For an excellent discussion of the distinction between a common law action for fraud and deceit and an action based on violation of the Housing and Rent Act, see Thomsen v. Mill, Mo.App., 248 S.W.2d

6. In this connection, see also Foss v. Ziton, Minn.1954, 64 N.W.2d 47, and Castrovinci v. Castrovinci, 93 Ohio App. 133, 112 N.E.2d 53.

Sander Real Estate & Inv. Co. v. Becker, Mo.App., 202 S.W.2d 549, 552(5)].[2] In short, we cannot "go behind" the certificate, itself.

The certificate, by virtue of which defendant "lawfully [gained] possession" of the premises, did *not* refer to defendant's petition, did *not* state or disclose whether or not the findings of the Area Rent Director were predicated upon defendant's petition, other statements, or independent investigation by the Director or his staff, and was *not* conditioned upon removal of the partition between the living room and dining room or, for that matter, upon the doing of any *specified* or *described* work. If the premises in question actually were altered and remodeled "to such an extent that a tenant could not remain in occupancy while the work was being done," the authorized purpose for eviction was satisfied and fulfilled and there was no breach of the "condition" in the certificate. We reject plaintiffs' contention that we should consider only those repairs and alterations specifically listed and described in defendant's petition.

No doubt, plaintiffs' testimony concerning conversations between the parties and alleged attempts to evict plaintiffs prior to issuance of the certificate on September 26, 1951, was admitted by the able trial judge on the theory that it was relevant under Count II of the petition, in which plaintiffs pleaded a common law cause of action for fraud and deceit. But, Count II having been dismissed at the close of plaintiffs' evidence, such testimony could have thereafter no relevancy, materiality or probative value in proper determination of the sole issue under plaintiffs' submitted theory, i. e., whether the premises actually were altered or remodeled "to such extent that a tenant could not remain in occupancy while the work was being done." [3]

The statement in plaintiffs' brief that "they would have been willing to remain in the house while repairs were taking place" is beyond and outside the record. Careful perusal of plaintiffs' reported testimony shows that the only question addressed to Mr. Duvall on this subject was " * * * would it have been necessary for you to have moved from the premises in order to sand the floors?" to which he replied, "No, it wouldn't," and that the only question addressed to Mrs. Duvall on this subject was "Would you have been willing to stay there while they were putting the tiling on the floor in the kitchen and in the bathroom?" to which she replied, "That's right, because we loved the place." Actual alterations and remodeling involved much more than sanding floors and laying asphalt tile in the kitchen and the bathroom. But, *even if* the record showed unqualified willingness on plaintiffs' part to have remained in the dwelling (or to have attempted to do so) during all of the work admittedly done, such avowed willingness to remain would have been of no material assistance in determination of the issue (as properly phrased in defendant's Instruction 6 given by the court) as to "whether the vacation of the premises by them (plaintiffs) was reasonably necessary for such repairs and alterations to be made." McClenney v. Cloud, Mo.App., 230 S.W.2d 110, 112(2); Burns v. Wallace, 191 Misc. 451, 78 N.Y. S.2d 99, 101–102(2).[4]

2. Although the cited cases arose under the Emergency Price Control Act of 1942, 56 Stat. 23, they considered and ruled the validity and effect of analogous certificates of eviction issued upon landlords' applications and the right of tenants to attack or impeach those certificates collaterally or to inquire into the landlords' good faith in obtaining the certificates. On principle, reason and logic, we should not depart from those holdings here.

3. See and compare the testimony of plaintiffs-tenants in Powers v. Shore, Mo.Sup., 248 S.W.2d 1, 3–4, "concerning defendant's [landlord's] conduct before the notices to vacate were served", which the court said, 248 S.W.2d loc. cit. 6, "has no probative force to establish the essential elements necessary to the fraud action in question."

4. Although it was held in McClenney v. Cloud, supra, and in at least two other

Counsel have not cited, and we have not found, a reported Missouri case controlling on the facts; but, the situation as to repairs in Calvin v. Martin, Ohio App., 111 N.E.2d 786, was so analogous as to make some of the comments in that opinion pertinent and persuasive here. Although the repairs actually made were not in literal, strict and precise accordance with the "conditions" of the certificate relating to eviction, the court there found, 111 N.E.2d loc. cit. 789, "*that there was substantial performance in relation to repairs.*"

In the instant case, six witnesses called by defendant (including the building contractor who installed the floor furnace, the floor sander, the electrician and the plumber who worked on the dwelling during January, 1952) testified that it would not have been practicable to have done the work with tenants occupying the house. Plaintiffs offered no evidence to the contrary; and, although we recognize that, in passing upon the sufficiency of the evidence to support the judgment, we must consider the competent evidence in the light most favorable to plaintiffs-respondents, according to them the benefit of all favorable inferences arising therefrom and disregarding defendant's evidence except insofar as it may aid plaintiffs' case [Smith v. Siedhoff, Mo.Sup., 209 S.W.2d 233, 234(1); Williamson v. St. Louis Public Service Co., 363 Mo. 508, 512–513, 252 S.W.2d 295, 297 (1); Sollenberger v. Kansas City Public Service Co., 356 Mo. 454, 462, 202 S.W.2d 25, 29(2)], the stated principle does not save plaintiffs in the instant case. For, there certainly was nothing in defendant's evidence which aided plaintiffs; and, in our view of the matter, the affirmative of the

disputed issue (i. e., that the alterations and remodeling admittedly done were such that plaintiffs reasonably could have remained in occupancy while the work was being performed), upon which plaintiffs were required to make a prima facie case, was not supported by substantial evidence and could not fairly and reasonably be inferred from the evidence adduced. Hoock v. S. S. Kresge Co., Mo., 230 S.W.2d 758, 759–760(1); Stone v. Farmington Aviation Corp., 363 Mo. 803, 253 S.W.2d 810, 813–814(7–10).

Bearing in mind that plaintiffs' cause of action is for alleged unlawful eviction under the Act [i. e., for having "lawfully [gained] possession from a tenant * * * and thereafter [failed] fully to comply with such requirements or conditions as may have been imposed for such possession by * * * any regulation, order or requirement" under the Act], excluding from consideration the evidence which might have been relevant in a common law action for fraud and deceit but which was not competent upon plaintiffs' submitted theory, and considering the work admittedly done during the month following plaintiffs' vacation of the premises (from which, as one witness aptly put it, "the house would be completely torn up inside"), we are unable to escape the conclusion that there was no evidentiary basis for submission of this case to the jury. Accordingly, the judgment for $50 on Count I of plaintiffs' petition and the subsequent judgment of $200 for attorneys' fees are reversed.

McDOWELL, P. J., and BLAIR, J., concur.

---

Missouri cases (Cieslinski v. Clark, Mo. App., 223 S.W.2d 139, and Booten v. Sutter, Mo.App., 216 S.W.2d 129), all of which were unlawful detainer actions, that the issue of the landlord's good faith in evicting his tenant was for the jury, those evictions were during an interim period when the Housing and Rent Act permitted eviction for certain speci-

fied reasons upon notice from the landlord. No certificate relating to eviction had been issued in any of those cases, and all of them were decided prior to amendments to the Act, under which regulations were promulgated which provided for issuance of certificates pertaining to eviction where possession was sought for alterations or remodeling.