248 S.W.2d 1 (1952)
POWERS
v.
SHORE.
No. 42223.
Supreme Court of Missouri, en Banc.
April 14, 1952.
*2 James R. Anderson, St. Louis, for plaintiffs-appellants Ben Powers and Belle Powers.
David Baron, Raymond M. Freed, Charles B. Baron, St. Louis, for defendant-respondent.
DALTON, Judge.
Action for $15,000 actual damages and $10,000 punitive damages for fraud and deceit. At the close of plaintiffs' case the court directed a verdict for defendant and entered judgment accordingly. Plaintiffs have appealed.
The evidence tended to show that for some nine years plaintiffs had lived in the east apartment on the first floor at 6429 Cates Avenue in St. Louis County. The apartment had a sun room, a living room, dining room, bedroom, kitchen and bathroom. It rented for $42.50 per month, unfurnished except for a frigidaire refrigerator and a stove. Defendant had owned the property and been plaintiffs' landlord for two or three years. On September 4, 1948, plaintiff Ben Powers was personally served with notices to vacate the premises. The person serving the notices said he was Mr. Fine of the Fine Real Estate Company. Mr. Fine had handed Mr. Powers an envelope. Mr. Powers opened it and found that it contained two notices to vacate the premises. He then called his wife and handed the notices to her. The notices will be referred to as exhibits "A" and "B". Exhibit "A", was as follows:

"Notice To Tenant To Terminate Month To Month Tenancy.
Date. September 4, 1948.
"To Mr. Ben Powers:
"You Are Hereby Notified and required to surrender and deliver up to me (us) the quiet and peaceable possession of the premises you now occupy, being Entire first floor apartment known and numbered as 6429 Cates Avenue (east side) together with all appurtenances thereto belonging, in the County of St. Louis, State of Missouri, and to remove therefrom on November 4, 1948, which is the expiration of at least 60 days from the date hereof.
"This notice is given you under the provisions of the Housing and Rent Control Act of 1948, 50 U.S.C.A. Appendix, § 1881 et seq., enacted by the Eightieth Congress of the United States, by the undersigned being your landlord and seeking in good faith to recover possession of said housing accommodations for the purpose of occupying said apartment as a home.
"If you do not surrender possession of said premises by the time above indicated, an action will be instituted at such time to evict you in accordance with the requirements of local law.
"Harry Shore
Owner and Landlord.
"Harry M. Fine Realty Co. Inc.
Agent.
"By Harry M. Fine,
President."
(Perforated line.)..................................

"Purposes For Which Possession May Be Undertaken
"The landlord seeks in good faith, to recover possession for his immediate personal use and occupancy as housing accommodations, or for the immediate and personal use and occupancy as housing accommodations by a member or members of his immediate family. * * *"
The printed matter at the foot of the notice continued with a statement of the various other grounds upon which a landlord could recover the possession of premises from tenants under the federal law and regulations.
Exhibit "B" was dated September 4, 1948, and was directed to Ben Powers. It was signed by the same parties and purported to require Mr. Powers to surrender and deliver up the quiet and peaceful possession *3 of the same premises described in Exhibit "A", and it continued as follows: "* * * and to remove therefrom at the expiration of one month from next rent due day, according to law, it being my intention to terminate your occupancy on that day."
The evidence shows that, promptly after the service of these notices, plaintiffs made efforts to find another location. Few residences were available at the time. To obtain one place, which had been advertised, they would have had to buy the furnishing at an excessive price. Similar conditions were met at other places. Rents were higher than plaintiffs had been paying. Plaintiffs after three weeks of effort were unable to rent another suitable place in which to live. Rents were too high and landlords insisted on having a lease. Nothing suitable could be found during a period of 40 days. Rental property was very difficult to find.
Plaintiffs then decided it would be necessary to buy in order to obtain a suitable place. They looked at many places and finally had to pay $18,000 to obtain a suitable place into which they could move by November 4, 1948. Plaintiffs moved from defendant's property on November 1, 1948, but plaintiffs later observed that the property was not occupied through November and December 1948, and through January and February 1949. After February there were "a couple of curtains in the window."
Plaintiff Ben Powers testified that he moved from the premises at 6924 Cates Avenue because he was "forced to move, forced to vacate the place" and because he received the notices. He relied on the statements in the notices and he said he had to rely on the statements therein since, "if they sent you a notice to move out you had to move out." He believed that the statements in the notices were true, he "didn't know anything else, but to believe it." Defendant did not at any time after the notices were served tell Mr. Powers he was not going to move in the property, nor indicate that he wasn't going to move in.
There was evidence that both plaintiffs were month to month tenants of the apartment owned by defendant. They rented from the defendant. The rent was due on the first of each month. They moved out without any suit having been filed to evict them from the premises. Plaintiffs instituted their suit against defendant on February 8, 1949, a little more than three months after they vacated the premises. All of the words in Exhibits "A" and "B" were typewritten except the words "east side." Mr. Powers did not notice whether these words were in the notices when the notices were served.
When asked if he tried to find out why defendant hadn't moved in before he filed suit, Mr. Powers asked counsel, "Why should I find out?" Mr. Powers did not have any conversation with defendant as to why he had not moved into the vacated premises. Powers said he had not "because I was too angry to talk to him for the dirty work he did, because I took it in good faith, him moving in, and after my passing by two or three times a week and finding the place vacant, it was enough to make a man angry. * * * I wasn't interested." Powers knew the place was still vacant on February 8, 1949, and authorized the suit.
Mrs. Powers also testified that she believed in, relied upon, and acted on the statements in the notices to vacate, and thought defendant was intending moving in. After she moved out, she often looked at the premises in December 1948 and January 1949 when she passed by, and "the place always looked vacant." She further testified concerning defendant's conduct before the notices to vacate were served. She said: "He use to annoy me, and walk into the house, and if I wouldn't open the door, and he would knock on the door and run into the bathroom with a man and keep turning off the water, and if he noticed a little leak in the basement, and he would always come up to my house and walk right in, and he use to annoy me. * * * Yes, sir, he walked in, and I was getting dressed to go out, and I said that I had an appointment to go away and would he go away, and he stood in the bathroom for a half an hour. * * * I kept yelling at him to walk out, I had the maid there. * * * He use to walk in and annoy me, *4 this was almost every day * * * he annoyed me all the time. * * * Since he started buying the house * * * I don't know how long, but he was around the house all the time. * * * He came in two or three times a week, that was enough to make you miserable. * * * I wouldn't say during the three years, no. * * * That continued about five or six months. * * * The last five or six months. * * * I was glad to get away from him, but I couldn't afford to buy a home Judge." Defendant did not advise her, prior to the time they moved out, that he didn't want the place. Plaintiffs had no desire to move.
It was stipulated between the parties that the deposition of the defendant contained certain statements and admissions, towit, that defendant knew within a week after November 1, 1948 that plaintiffs had moved out; that the premises (6924 Cates Avenue) remained vacant until March 12, 1949, when defendant said he moved in; that there was no altering or remodeling to be done and none was done between November 1, 1948 and March 12, 1949; that defendant did not represent to plaintiffs or either of them that any alterations or remodeling was desired; that the Salvation Army truck moved the furniture into the apartment; that defendant bought things, towit, four chairs, a table, a sofa, a bed and springs, a mattress and a chifferobe from the Salvation Army and delivery was made; that the furniture cost $150; and that defendant bought three new rugs from the People's Furniture and Clothing Company.
In their petition plaintiffs alleged many grounds and items of damage and they offered much evidence in support of these allegation, but in view of the conclusions we have reached it will not be necessary to review the evidence in support of the damages alleged to have been sustained by plaintiffs. It is sufficient to say that damages were shown.
As stated, the trial court directed a verdict for defendant. The court appears to have sustained the motion on the ground that the notices served on plaintiff Ben Powers were not such as would compel the plaintiffs to quit the premises; that the notices did not ask for immediate occupancy of the premises; and that "the plaintiffs have not made a case." If the trial court properly directed a verdict for defendant it is immaterial that the court may have assigned an erroneous or insufficient reason for its ruling. Brown v. Moore, Mo.Sup., 248 S.W.2d 553, not yet reported in the State Reports; Missouri Electric Power Co. v. City of Mountain Grove, 352 Mo. 262, 176 S.W.2d 612, 616(10); Holland Banking Co. v. Republic Nat. Bank, 328 Mo. 577, 41 S.W.2d 815, 820.
Appellants assign error on the action of the court in directing a verdict for defendant and insist that they pleaded and proved a cause of action at common law for fraud and deceit. Appellants say that "during the times involved in this suit, i. e., 1948 and through March 1949, the Housing and Rent Act of 1948 (Public Law No. 464, 80th Congress, 2nd Sess. C. 161) was in effect"; that "this law did not provide for the issue of any certificate relating to eviction, as was required by the Emergency Price Control Act of 1942, 56 Stat. 23, and by the present Rent Law now in existence"; that the "1948 Act * * * merely required that the landlord have any one of four grounds to remove the tenant directly in a court of action, without previous clearance with the office of Housing Expediter"; that the cause of action, here, does not arise under the 1948 Act, but at common law; that is "not a new cause of action, but rather the application of old, established and reliable principles of law to new situations"; and that "the cause of action is concerned with the 1948 Act only in so far as that Act sets up a cloak of protection for a tenant, which is the legal right he relinquishes when he believes the landlord's statement of a ground of removal under this 1948 Act."
We need not determine whether plaintiffs could or did state a common law action for fraud and deceit, but only whether plaintiffs' evidence was sufficient to make a submissible case for fraud and deceit. Those interested, however, may consult Bedell v. Daugherty, Mo.Sup., 242 S.W.2d 572; Crawford v. Pituch, 368 Pa. 489, 84 A.2d 204; Teare v. Sussman, 120 Colo. 488, *5 210 P.2d 446; Reid v. Brown, 49 A.2d 311, 24 N.J.Misc. 350; Bernofsky v. Rabinowitz, 191 Misc. 382, 77 N.Y.S.2d 608; Alabiso v. Schuster, 273 App.Div. 655, 80 N.Y.S.2d 314; Nyulassie v. Mozer, 85 Cal. App.2d Supp. 827, 193 P.2d 167.
"Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury." 37 C.J.S., Fraud, § 3, page 215. And see Nash v. Normandy State Bank, Mo.Sup., 201 S.W.2d 299, 303 and cases cited: Jeck v. O'Meara, 343 Mo. 559, 122 S.W.2d 897, 902; Gockel v. Gockel, Mo.Sup., 66 S.W. 2d 867, 870, 92 A.L.R. 784; 23 Am.Jur. 773, Fraud & Deceit, Sec. 20. The establishment of each of these essential elements is necessary to a recovery. Dillon v. Hill, Mo.Sup., 178 S.W. 85; Orlann v. Laederich, 338 Mo. 783, 92 S.W.2d 190, 194. "Fraud is never presumed, but must be proven. Yet it is not necessary that it be shown by direct evidence. It may be established by facts and circumstances, and the burden of proof rests upon him who asserts it to make it manifest." Hardwicke v. Hamilton, 121 Mo. 465, 473, 26 S.W. 342, 344; Orlann v. Laederich, supra. The difficulty of proving fraud does not dispense with the necessity of making the proof. Ray County Savings Bank v. Hutton, 224 Mo. 42, 72, 123 S.W. 47; Lowther v. Hays, Mo.Sup., 225 S.W.2d 708, 713. "And where the transaction under consideration may as well consist with honesty and fair dealing, as with a fraudulent purpose, it is to be referred to the better motive." Jones v. Nichols, 280 Mo. 653, 216 S.W. 962, 964; Moberly v. Watson, 340 Mo. 820, 102 S.W.2d 886, 889; Tobin v. Wood, Mo. Sup., 159 S.W.2d 287, 290.
Appellants point to the second paragraph of Exhibit "A", together with the first paragraph appearing below the perforated line, and insist that the notice was a representation that the possession of the premises was wanted for the "immediate personal use and occupancy as housing accommodations" for the owner, "as a home." In effect appellants contend that by the said notice defendant made a misrepresentation of a present existing fact, towit, the state of mind and existing purpose of the defendant. Thieman v. Thieman, Mo.Sup., 218 S.W.2d 580, 585; Ashton v. Buchholz, 359 Mo. 296, 221 S.W.2d 496, 503. Assuming without deciding that the purpose represented was as contended for by appellants, we will determine whether they offered substantial evidence to prove (1) that the said representation, if it was one to the effect contended for, was false when made; (2) that the said representation was known to the defendant to be false when it was made by defendant and when it was acted upon by the plaintiffs and (3) that the representation was made for the purpose of deceiving and defrauding the plaintiffs of their right to remain in the premises as tenants. Respondent insists that "there was a failure of proof as to falsity, fraudulency, wrongfulness and deceit."
On the issues mentioned, the appellants of necessity, in view of the record, can only rely upon the fact that the owner did not move into and occupy the premises as a home until March 12, 1949, and after the present suit had been instituted on February 8, 1949. We have concluded that such fact was wholly insufficient to constitute substantial evidence to carry the case to the jury on the issues mentioned. There was no evidence that the defendant did not subsequently move into the apartment and occupy it as a home. Plaintiffs, in fact, offered defendant's admission or statement that he did move into and occupy the apartment on March 12, 1949.
As stated, in an action for damages for fraud and deceit, the rule is that there can be no recovery without proof that the representations were false and fraudulent. Sedgwick v. National Bank of Webb City, 295 Mo. 230, 243 S.W. 893, 901(10). A fraudulent intent is an essential element. Ray County Savings Bank v. Hutton, supra; Herold v. Pioneer Trust Co., 211 *6 Mo.App. 194, 242 S.W. 124, 126; MacKinnon v. Weber, Mo.App., 109 S.W.2d 692. The burden of proof rests upon the party assailing the transaction to show the fraud. Bank of Brimson v. Graham, 335 Mo. 1196, 76 S.W.2d 376, 383, 96 A.L.R. 399.
The truth or falsity of the representation must be determined as of the time it was made and as of the time it was intended to be, and was, relied upon and acted upon. If the expression of a state of mind or an existing purpose was true when made and was made in good faith, then any subsequent change of purpose made in good faith is not material to the transaction. The mere fact that defendant failed to promptly move into the apartment, when vacated, without any proof whatever of the circumstance attending the delay, was wholly insufficient to make out a prima facie case that the representation was false when made by defendant and when acted upon by the plaintiffs. Facts and circumstances which lead only to a suspicion of fraud or facts and circumstances as consistent with honesty and good faith as with fraud are insufficient to make out a case for the jury. Ray County Savings Bank v. Hutton, supra, 224 Mo. 42, 72, 123 S.W. 47. The evidence of subsequent events concerning the time and the circumstance under which defendant moved into the apartment were insufficient to show that the representation was false when made and when acted upon. Meriwether v. Lumbard, Mo.App., 246 S. W.2d 363, 367(9); Budd v. Budd, 233 Mo. App. 377, 122 S.W.2d 402, 409. Nor would the evidence in the record have sustained a finding that the representation was known to the defendant to be false when it was relied upon and acted upon by the plaintiffs. Further, there was no sufficient evidence to show that the representation was made for the purpose of deceiving and defrauding the plaintiffs of their right to remain in the premises as tenants.
The evidence concerning defendant's conduct in annoying Mrs. Powers has no probative force to establish the essential elements necessary to the fraud action in question. Such evidence tended to sustain, quite as much as to rebut, the statements contained in Exhibit "A" as to the purpose for which possession of premises was desired. The court did not err in directing a verdict for the defendant.
The judgment is affirmed.
All concur.