William O'SHAUGHNESSY, Jr., et al., Plaintiffs-Respondents,

v.

**WARD AIRCRAFT SALES & SERVICE, INC., Defendant-Appellant.**

No. 37274.

Missouri Court of Appeals, St. Louis District, Division Three.

May 24, 1977.

---

1. This is true as to the order of November 6, 1975 if it be considered not to have been amended by the order of April 30, 1976.

Robison & Blanton, James R. Robison, Sikeston, for defendant-appellant.

George E. Sullivan, O'Fallon, for plaintiffs-respondents.

GUNN, Judge.

Plaintiffs brought an action in fraud arising out of the sale of a Cessna 177 airplane purchased by plaintiffs from defendant Ward Aircraft Sales and Service, Inc. In the first of a two count petition, plaintiffs alleged that Paul Bozwell, as agent for St. Charles Flying Service, Inc., misrepresented to plaintiffs the fact that the airplane was equipped with a 360 channel radio when it contained only a 90 channel radio. Count two of plaintiffs' petition alleged that the log books kept in the Cessna 177 by Ward Aircraft misrepresented that the airplane was equipped with a 360 channel radio. The plaintiffs sought to recover $5,000 in actual damages and $25,000 in punitive damages from the defendants, Paul Bozwell, St. Charles Flying Service and Ward Aircraft. The jury returned a verdict in favor of plaintiffs against defendant Ward Aircraft, awarding plaintiffs $800 actual damages and $2,500 punitive damages. The record is silent as to the jury's verdict concerning defendants Bozwell and St. Charles Flying Service. Presumably each was found not to be liable, and no appeal has been taken concerning these two defendants.

Ward Aircraft appealed raising four points of alleged error: 1) the trial court erred in overruling defendants' motion for directed verdict at the close of the evidence; 2) the trial court erred in submitting plaintiffs' damage instruction, in that it contained an incorrect measure of damages and was unsupported by the evidence; 3) the trial court erroneously submitted the issue of punitive damages, in that the evidence did not warrant the imposition of punitive damages; and 4) the trial court erred in overruling Ward Aircraft's objection to plaintiffs' evidence concerning radio and navigational equipment which had been purchased, in that such evidence was irrelevant. We find that the plaintiffs failed to make a submissible case against Ward Aircraft and reverse the judgment.

Inasmuch as Ward Aircraft has challenged the sufficiency of the evidence, we view the evidence in the light most favorable to the plaintiffs giving them the benefit of every reasonable inference which the evidence tends to support. *Jurcich v. General Motors Corp.*, 539 S.W.2d 595 (Mo.App. 1976).

This litigation arises out of the purchase of an airplane by the plaintiffs from Ward Aircraft. Plaintiffs, William O'Shaughnessy, who was a licensed pilot, and his wife, Shirley O'Shaughnessy, who was taking flying lessons, had discussed the possibility of purchasing an airplane. Mr. O'Shaughnessy had particular interest in upgrading his license by obtaining an instrument rating which would qualify him to land an airplane by use of radio and navigational equipment when visibility was poor. The plaintiffs were introduced to Paul Bozwell, the sales manager for St. Charles Flying Service. Mr. O'Shaughnessy told Mr. Bozwell that he was looking for a 1968 or 1969 Cessna 177 airplane equipped with a 360 channel radio. A month after their initial meeting, Mr. Bozwell took the plaintiffs to look at a Cessna 182 equipped with a 360 channel radio, but plaintiffs rejected that airplane. About two weeks later the plaintiffs noticed on an advertising board at St. Charles Flying Service that a Cessna 177 with a 360 channel radio was advertised for sale in Sikeston[1] and notified Bozwell that they would like to inspect the airplane.

Plaintiffs and Bozwell flew to Sikeston and inspected the airplane which was owned by Ward Aircraft. The airplane was partially disassembled and not in flying condition. Plaintiffs and Bozwell looked at

1. At trial, Bozwell acknowledged that a Cessna 177 was listed on the advertising board but categorically denied that there was any reference on the board to radio equipment or location of the aircraft.

the radio, but it was not in operating condition. The plaintiffs also looked at the airplane's log book which contained a list of the airplane's equipment. On the visit to Sikeston the plaintiffs did not meet or speak to anyone from Ward Aircraft, and no one mentioned or suggested to the plaintiffs that the airplane contained a 360 channel radio. Approximately two weeks later, the plaintiffs requested Bozwell to have James Ward of Ward Aircraft fly the Cessna 177 to St. Charles for another inspection. For the first time, the plaintiffs met James Ward, and with their flight instructor, the plaintiffs took a test flight in the airplane. Mr. O'Shaughnessy testified that he was "disgusted" with the condition of the airplane and acknowledged that Bozwell had urged him not to buy the airplane, as a Cessna 177 was a very poor flying craft. At no time did the plaintiffs make any inquiry of anyone as to whether the airplane had a 360 channel radio, nor did anyone suggest to them that it was equipped with such a radio. In fact, the radio did not function and was not used on the test flight. Mr. O'Shaughnessy told Mr. Ward after the test flight that he did not want to purchase the airplane. However, Mrs. O'Shaughnessy persuaded her husband to purchase the airplane because it had a 360 channel radio and because she liked the airplane's color. The purchase was made despite Bozwell's admonition against the purchase of the Cessna 177; despite the fact that the radio had never worked for the plaintiffs; and despite the fact that no one from Ward Aircraft had ever made any oral representation that the airplane contained a 360 channel radio.

The plaintiffs purchased the Cessna 177 airplane from Ward Aircraft for $7,800. Two weeks after the purchase, while attempting to have the airplane's radio repaired, the plaintiffs learned for the first time that it was a 90 channel rather than a 360 channel radio.

The plaintiffs thereupon sued St. Charles Flying Service and Paul Bozwell in one count and Ward Aircraft in another count, alleging misrepresentation of the radio by Bozwell as agent for St. Charles flying service and misrepresentation of the radio by Ward Aircraft by reason of the airplane's log book listing of equipment.[2] At trial the plaintiffs produced evidence elucidating the difference between a 90 channel and a 360 channel radio. Through various witnesses it developed that a 360 channel radio was preferable as it permitted landings at a greater variety of airports. Mr. O'Shaughnessy testified that after purchasing the Cessna 177 and finding that it only had a 90 channel radio he made two separate purchases of 360 channel radios. The jury returned a verdict in favor of plaintiffs against Ward Aircraft for $800 actual damages and $2,500 punitive damages.

▮ The elements of a misrepresentation cause of action are: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of the falsity or his ignorance of the truth; 5) the speaker's intent that his statement be acted upon; 6) the hearer's ignorance of the falsity of the statement; 7) his reliance on the truth of the statement; 8) the hearer's right to rely on the statement; and 9) the hearer's consequent and proximate injury. *Ackmann v. Keeney-Toelle Real Estate Company*, 401 S.W.2d 483, 488 (Mo. banc 1966); *Teal v. Lee*, 506 S.W.2d 492, 496 (Mo.App.1974); *Yeager v. Wittels*, 517 S.W.2d 457, 463 (Mo. App.1974). The burden rests upon the party who asserts the fraud to prove each of these elements. *Powers v. Shore*, 248 S.W.2d 1 (Mo. banc 1952); *Yeager v. Wittels*, supra. "Fraud is never presumed but must be proven. Creating a mere suspicion does not meet this burden of proof, for, '. . . if the facts shown are consistent

---

**2.** From the testimony, Federal Aviation Administration regulations require that equipment lists must be kept current and that the owner of the airplane has the responsibility, before transferring an airplane, to supply the new owner with a listing of all equipment.

as well with honesty as with fraud, the transaction should be held honest.' *Bolten v. Colburn,* Mo.App., 389 S.W.2d 384, 390; *Williams v. Miller Pontiac Co.,* Mo.App., 409 S.W.2d 275." *Swager v. Vogt,* 435 S.W.2d 49, 51–52 (Mo.App.1968). While fraud cannot be presumed, "it must be borne in mind that fraud is seldom susceptible of proof by direct evidence, but must almost invariably be shown by circumstances surrounding the transaction from which fraud may be reasonably inferred." *Yeager v. Wittels,* supra at 463; *Powers v. Shore,* supra; *Williams v. Miller Pontiac Co.,* supra. With these principles in mind we examine the record to determine whether the plaintiffs have made a submissible case.

■ The plaintiffs proceeded at trial on the theory that Mr. Bozwell, for himself and St. Charles Flying Service and Ward Aircraft, separately, misrepresented that a 360 radio was in the Cessna 177. The plaintiffs did not claim or attempt to prove that Bozwell was Ward Aircraft's agent or that Ward Aircraft would be responsible for Bozwell's actions.[3] Thus, we are concerned only with Ward Aircraft's alleged representations concerning the radio. The record reveals that Ward Aircraft potentially made two separate representations concerning the radio: 1) the advertisement on the advertising board at St. Charles Aircraft, and 2) the information contained in the log book. As to the advertising board, we believe the jury could find that Ward Aircraft called Bozwell and told him that the Cessna 177 had a 360 radio and that Bozwell placed the information on the advertising board, although Bozwell emphatically denied that the board contained any such information. This is based on plaintiffs' testimony that the advertisement listed the 360 channel equipment, together with Bozwell's testimony that whatever information went on the board would come directly from the airplane's owner. While the jury could have

found that Ward Aircraft made this representation, it could not find that plaintiffs relied on this representation. (element # 8). Neither of the plaintiffs testified that they relied on this advertisement. Furthermore, when asked what he relied on in believing the plane had a 360 channel radio, Mr. O'Shaughnessy testified several different times that he relied solely on the log book and Mr. Bozwell's representations. The plaintiffs positively conceded that they had never conveyed to Ward Aircraft that they were looking for a 360 channel radio, nor did Ward ever discuss with them or state that the Cessna 177 contained a 360 channel radio. This was the plaintiffs' evidence.

■ Turning to the alleged representation contained in the equipment list of the plane's log book, we find that the plaintiffs have failed to carry their burden of proving that the list represented that the plane had a 360 channel radio. The testimony concerning the equipment list is anything but clear. The plaintiffs concede that nowhere did the list actually state in so many words that there was a 360 channel radio. Mr. O'Shaughnessy testified that he saw listed a "Cessna Nav/Com 300" which he knew to be a 360 channel radio. The equipment list was admitted into evidence and deposited with this court. Our examination of the list reveals that several items appear as "Cessna Nav/Com 300" followed by differing and unexplained numbers and letters. Furthermore, the 90 channel radio that was in the Cessna 177 and was placed before us by plaintiffs prominently and specifically states on its face: "Cessna 300 NAV/COMM." Thus, based on the only specific testimony as to what within the log represented a 360 channel radio, we must conclude that Mr. O'Shaughnessy mistaken-

3. This is evident both from plaintiffs' pleadings and verdict directing instructions. The instructions were written to enable the jury to find Bozwell and his employer, St. Charles Aircraft, liable for Bozwell's representations, and Ward Aircraft liable for Ward Aircraft's representations.

ly thought "Cessna Nav/Comm 300" was a 360 channel radio and that the representation he relied on did not in fact indicate that the radio had 360 channels. Based on Mr. O'Shaughnessy's testimony and an examination of the radio introduced into evidence, it must be said that the radio was represented to be 90 channels and not 360. While it is possible that some item on the equipment list did indicate that there was a 360 channel radio, there is nothing in the record to show what that item specifically was. What we are left with is the bald assertion that somewhere in the equipment list Ward Aircraft represented that the radio had 360 channels, and furthermore that the item admittedly relied on did not in fact, based on the evidence in the record, represent anything other than a 90 channel radio. Mrs. O'Shaughnessy testified that a radio verification card found in the log book indicated that the radio had 360 channels. She testified that while the card did not specifically state the radio had 360 channels, there were certain numbers on it that indicated that it had 360 channels. Mrs. O'Shaughnessy testified, however, that she only learned about the meaning of the numbers some two weeks after they bought the plane. She did state that her husband knew the significance of the numbers on this card, but she then stated that they really did not totally rely on it. Mr. O'Shaughnessy in his testimony did not mention the card. He did state that he knew the radio had 360 channels due to the "Cessna Nav/Com 300" listing in the equipment chart and other "supporting evidence." This vague statement is insufficient to support a conclusion that prior to the purchase he relied on the radio verification card. And, of course, the 90 channel radio in the airplane when purchased is clearly marked on its face as "Cessna Nav/Comm 300." Furthermore, as indicated earlier, he testified that he relied on the log book and the statements made by Bozwell. Thus, even if the card did represent the radio as having 360 channels, the plaintiffs' own testimony shows they did not rely on it. Having failed to prove that the log represented a 360 channel radio, plaintiffs have failed to carry their burden of proof on the first and second elements of their cause of action: that Ward Aircraft made a representation and that it was false.

▮ Even if we were to conclude that there was substantial evidence that Ward Aircraft misrepresented the Cessna 177 as having a 360 channel radio, and that plaintiffs relied on these representations, we believe that the plaintiffs failed to prove the fifth element of their cause of action—the speaker's intent that the bearer act upon the misrepresentation. The rule is firmly established that existence of a fraudulent intent, or an intent to deceive is an indispensible element of plaintiffs' cause of action. *Jefferson County Bank & Trust Co. v. Dennis*, 523 S.W.2d 165 (Mo.App.1975); *Cohen v. Metropolitan Life Insurance Company*, 444 S.W.2d 498 (Mo.App.1969). There is nothing in the record to prove that any representative of Ward Aircraft knew of the importance placed by the plaintiffs on a 360 channel radio. The plaintiffs concede that they never informed anyone with Ward Aircraft that they wanted a 360 radio. Plaintiffs also acknowledge that no one from Ward Aircraft ever told them that the airplane contained a 360 channel radio; plaintiffs and Ward Aircraft never discussed radio equipment. The only person who had this knowledge was Mr. Bozwell. However, as plaintiffs did not proceed in trial on the theory that Bozwell was acting as an agent for Ward Aircraft, his knowledge cannot be imputed to the defendant. As Ward Aircraft was unaware of the importance of a 360 channel radio, even if it misrepresented the 90 channel radio as having 360 channels, it cannot be said that they did so with the intent to deceive the plaintiffs.

Plaintiffs' evidence offers no proof that Ward Aircraft misrepresented the number of channels of the radio or that any misrepresentations were relied on by plaintiffs or

**736**

that any misrepresentations were made by Ward Aircraft with the intent to defraud the plaintiffs. We therefore hold that a verdict should have been directed in favor of Ward Aircraft.

 There is further reason for reversing the judgment. The record is lacking evidence of actual damages to plaintiffs. On each occasion when the plaintiffs inspected and tested the Cessna 177, the radio was inoperable, and the record is destitute of any evidence as to the value of a nonoperating 360 channel radio, which is the type that plaintiffs allegedly assumed that they were acquiring with the purchase of the airplane. The only evidence regarding value of radios related to a new "Norko" brand 360 channel radio, not a used, nonfunctioning Cessna 360 channel radio which plaintiffs thought to be in the airplane. Plaintiffs' expert as to values on radios testified that the Norko was a superior radio to a Cessna and that he had absolutely no familiarity with the value of Cessna radios. Thus, there was no evidence to support a finding of actual damages to plaintiffs. The jury was required to speculate as to damages without any basis for determining with reasonable certainty what plaintiffs' damages were, which, of course, will not serve as a basis for a finding of actual damages. *Warner v. Southwestern Bell Telephone Company*, 428 S.W.2d 596 (Mo. 1968); *Pallardy v. Link's Landing, Inc.*, 536 S.W.2d 512 (Mo.App.1976); *Lewis v. Hubert*, 532 S.W.2d 860 (Mo.App.1976); *Thienes v. Harlin Fruit Company*, 499 S.W.2d 223 (Mo.App.1973). And without evidence of actual damages, there can be no exemplary damages. *Compton v. Williams Bros. Pipeline Company*, 499 S.W.2d 795 (Mo.1973); *Adelstein v. Jefferson Bank & Trust Company*, 377 S.W.2d 247 (Mo.1964); *Ervin v. Coleman*, 454 S.W.2d 289 (Mo.App. 1970).

The judgment is reversed.

KELLY, P. J., and WEIER, J., concur.