**Vicki BURNETT, Plaintiff–Respondent,**

v.

**THRIFTY IMPORTS, INC., Defendant–Appellant.**

No. 15858.

Missouri Court of Appeals, Southern District, Division One.

July 10, 1989.

Dee Wampler, Wampler, Wampler & Catt, Springfield, for defendant-appellant.

No appearance for plaintiff-respondent.

HOLSTEIN, Chief Judge.

Plaintiff Vicki Burnett brought an action for fraud against defendant Thrifty Imports, Inc. (Thrifty). A jury returned a verdict awarding plaintiff $1,500 actual damages and $3,000 punitive damages. Judgment was entered on the verdict. Thrifty appeals.

Four points are raised on appeal: (1) there was no probative evidence to support one element of plaintiff's claim of fraud, (2) plaintiff, during her testimony, abandoned her claim for punitive damages, (3) there was no probative evidence to support the claim for punitive damages, and (4) the approved instruction defining legal malice should not have been given.

From the terminology used in points one and three, it is unclear whether Thrifty is seeking a reversal because the verdict and judgment are against the weight of the evidence, or because the evidence is insufficient to support the verdict and judgment. Weighing evidence is a function of the trial court; appellate courts do not weigh evidence. *City of Lake Ozark v. Campbell,* 745 S.W.2d 799, 801 (Mo.App.1988). Accordingly, it will be assumed Thrifty is attacking the sufficiency of the evidence. When reviewing the sufficiency of evidence to support the verdict, we consider the evidence and reasonable inferences favorable to the jury verdict and disregard defendant's evidence except as it may support the verdict. *Bayne v. Jenkins,* 593 S.W.2d 519, 521 (Mo. banc 1980). The following recital of facts is made with those principles in mind.

Burnett was the owner of a 1972 Volkswagen bus. After the bus broke down in March of 1984, she had it towed to Thrifty, the Volkswagen dealer in Springfield. On March 15, 1984, she spoke by telephone with Troy Phillips, a service adviser for Thrifty. According to plaintiff, Phillips informed her the engine had gone out and she had two choices. One was to rebuild the engine at a cost of approximately $1,000. The other option was to get a new engine at a cost of $400 to $500 more. After consulting with her banker, plaintiff called Phillips and told him to put the new engine in the bus. The advantage of the new engine over rebuilding the old engine was an extended warranty. Burnett was told there would be a delay because the engine was not in stock, and "it had to be put on the line to be made." Later she was contacted by Phillips, who informed her that the new engine had been installed.

A friend of Burnett, Jack Kinnamon, went to pick up the bus on April 6, 1984. He was given an invoice showing the parts and labor used in replacing the engine.

Nothing on the invoice indicated any parts were used or rebuilt. The notation next to the labor instructions portion of the invoice simply stated, "Replace short block" assembly. Kinnamon took the bus back for a 1,000–mile check on May 1, 1984. The invoice at that time noted that a 1,000–mile check was performed on a "new" motor.

According to Burnett, she was never informed that the engine installed in her bus was not new until after a recurrence of mechanical problems in September of 1984. After the September breakdown, the bus was again taken to Thrifty for examination. On October 26, 1984, the bus was returned to plaintiff, and for the first time she was notified that the engine was rebuilt and not new. Plaintiff asserted that she would not have bought the engine if she had known it was rebuilt.

Phillips testified on behalf of Thrifty. During cross-examination, he stated he had no specific recollection of the conversation with plaintiff. He also admitted he never intended to install a new engine in plaintiff's bus.

John Hunton, Thrifty's former service manager, testified that he made the invoice notation regarding the 1,000–mile check on the "new" motor on May 1, 1984. He claimed the notation was for the benefit of technicians. He denied having ever told any customer with a twelve-year old bus who was having an engine replaced that the engine would be new.

■ Thrifty's first point asserts plaintiff failed to prove that defendant's employees knew their representation was false. Thrifty also asserts that fraud may not be proven by circumstantial evidence. In support of the point, Thrifty cites *Powers v. Shore*, 248 S.W.2d 1 (Mo. banc 1952), and *Bauer v. Adams*, 550 S.W.2d 850 (Mo.App. 1977).

The cases relied on by Thrifty are not necessarily helpful to its position. In *Powers* the plaintiffs were tenants in the defendant-landlord's apartment. Pursuant to rights granted under certain federal laws, the defendant notified the plaintiffs to vacate the premises because he desired to use the apartment for the personal occupancy of himself or members of his immediate family. The plaintiffs, at considerable expense, removed themselves from the premises, but observed that their former residence remained unoccupied for several months. The court held that the absence of evidence of the defendant's intent not to move onto the premises and occupy it as a home at the time the notice was served defeated plaintiffs' claim.

> The truth or falsity of the representation must be determined as of the time it was made and as of the time it was intended to be, and was, relied upon and acted upon.... Facts and circumstances which lead only to a suspicion of fraud or facts and circumstances as consistent with honesty and good faith as with fraud are insufficient to make out a case for the jury.

*Powers v. Shore, supra*, at 6. In reaching that conclusion the court also noted that while fraud is never presumed, "it is not necessary that it be shown by direct evidence. It may be established by facts and circumstances...." *Powers v. Shore, supra*, at 5.

*Bauer* forthrightly states that plaintiffs can prove an intent to deceive by direct evidence or by circumstantial evidence from which intent may be inferred. *Bauer v. Adams, supra*, at 853.

In this case, testimony by plaintiff that Thrifty's employee promised to install a new motor, coupled with the employee's admission that he did not intend to install a new motor, were sufficient circumstances to justify an inference that the employee knew the representation was false when made. *See Empire Bank v. Walnut Products, Inc.*, 752 S.W.2d 404, 407 (Mo.App. 1988).

Thrifty further argues that plaintiff and defendant did not have the same understanding of what "new" meant. There is nothing in the record to indicate that the word "new" has some esoteric meaning used by automobile mechanics which differs from the ordinary meaning of the word. Even if a mechanic calls a rebuilt engine a new engine, that secret meaning

does not excuse defendant's conduct. "If a fact is peculiarly within the knowledge of one party by reason of his superior knowledge, and not within the fair and reasonable reach of the other party, a legal duty of disclosure arises and concealment of the fact by silence is fraud." *Curtis v. Kays,* 670 S.W.2d 887, 893 (Mo.App.1984). *See also Centerre Bank of Independence v. Bliss,* 765 S.W.2d 276, 284 (Mo.App.1988). The first point is without merit.

■ Thrifty's second point argues that during her testimony, plaintiff abandoned her claim for punitive damages. In support of that argument, Thrifty cites 1A C.J.S. *Actions* § 255 (1985), which states in part, "Plaintiff may abandon his action by announcing in open court his intention to do so, or abandonment may be implied from his acts and conduct or omissions."

During plaintiff's cross-examination, the following exchange occurred:

Q: [By defense counsel] All right. Incidentally, Troy was polite to you, wasn't he, and mannerly over the phone?

A: Yes.

Q: He was not rude to you or malicious?

A: No.

 . . . .

Q: You don't really want to sue the defendant for punitive damages, do you? You just want your money back to pay the bank.

A: I want what is fair.

Q: Well, I need an answer to my question. I'm going to have to insist on it.

A: I'm not particularly out after a big bunch of money. Yes, I'd like to have what I have been damaged.

Q: Well, do you want punitive damages, ma'am, for the *malicious acts* of Thrifty Imports? (Emphasis added)

A: No.

The colloquy continued on recross-examination of plaintiff:

Q: Ma'am, you don't want fifty thousand dollars for punitive damages against Thrifty because of their *malicious conduct,* do you? (Emphasis added)

A: No.

Q: And you're saying that now under oath to the jury. You've said it before today and you have said it under oath three years ago.

A: That's correct.

Q: That you didn't want the punitive damages, is that right?

A: That's correct.

The use of the word "malicious" in our legal jargon has led to confusion even among attorneys and judges. *Burnett v. Griffith,* 769 S.W.2d 780, 789 (Mo. banc 1989). Three degrees of malice have been identified, one of which is actual malice. *Proctor v. Stevens Employment Services, Inc.,* 712 S.W.2d 684, 686 (Mo. banc 1986). Actual malice is malice used in its universal sense as understood by laymen. It means "ill will, spite, personal hatred, or vindictive motives." *Sanders v. Daniel International Corp.,* 682 S.W.2d 803, 807 (Mo. banc 1984). Actual malice is not essential to recovery of punitive damages in a case of fraud. *Burnett v. Griffith, supra,* at 788. Considering the context of the quoted testimony, plaintiff's understanding of malice was the popular definition. She was only declaring that her claim for punitive damages was not based on the exhibition of hate or spite by Thrifty's employees. Her admission that the suit was not based on "malicious" conduct or acts did not amount to an abandonment of the claim for punitive damages. Thrifty's second point is denied.

■ Thrifty's third point claims the evidence was insufficient to support the award of punitive damages. As previously noted, punitive damages in a fraud case are not awarded because of hatred, ill will, or spite on the part of the offending party. Punitive damages are permissible where an intentional fraud is committed and the offensive act is "outrageous because of the defendant's evil motive or reckless indifference to the rights of others." *Burnett v. Griffith, supra,* at 789; Restatement (Second) of Torts § 908(2) (1979). The evidence shows Thrifty's employees misrepresented the engine to be new. The evidence supports a finding that Thrifty's motive in representing the engine as new was to induce plaintiff to pay for a new engine, although Thrifty's employees never intend-

ed to and did not install a new engine. That nefarious purpose is precisely the sort of motivation an award of punitive damages is designed to discourage. The evidence was sufficient to support the submission of punitive damages.

 Point four attacks the giving of Missouri Approved Instruction 16.01. Since the trial in this case, the Missouri Supreme Court has directed that MAI 16.01 is no longer to be used. *Burnett v. Griffith, supra.* However, the propriety of the giving of the instruction is not before us in this case. Specific objections to instructions must be made during trial or must be set forth in the motion for new trial to preserve the error for appellate review. *Black v. Cowan Construction Co.,* 738 S.W.2d 617, 620 (Mo.App.1987); Rule 78.-07.[1] Thrifty's attorney only made a general objection to the instruction at trial. The motion for new trial makes no complaint about the giving of the instruction defining legal malice. The fourth point does not seek plain error review and is not otherwise preserved for consideration on appeal. Accordingly, the fourth point is denied.

The judgment is affirmed.

CROW, P.J., and GREENE, J., concur.

*a*

---

**1.** Rule references are to Missouri Rules of Court (20th ed. 1989).